# No. 21-2921

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

ESTATE OF KWANG LEE, Deceased, Anthony J. Frese, Executor,

Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

## ON APPEAL FROM THE DECISION OF THE UNITED STATES TAX COURT

## BRIEF FOR THE APPELLEE

DAVID A. HUBBERT
*Deputy Assistant Attorney General*

JENNIFER M. RUBIN            (202) 307-0524
PAUL A. ALLULIS             (202) 514-5880
*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

# TABLE OF CONTENTS

**Page**

Table of contents...................................................................i

Table of authorities ...........................................................ii

Glossary ...........................................................................viii

Statement of subject matter and appellate jurisdiction .........................1

Statement of the issue........................................................2

Statement of related cases and proceedings ...........................................3

Statement of the case ........................................................3

    A.   The Estate's unpaid federal estate-tax liabilities..................3

    B.   The CDP proceedings ..........................................6

    C.   The proceedings in the Tax Court .........................................13

        1.   The parties' arguments.................................................13

        2.   The Tax Court's decision ..............................................16

Summary of argument ........................................................20

Argument .......................................................................23

    Appeals did not abuse its discretion in rejecting the Estate's offer-in-compromise and sustaining the IRS's proposed collection action ..............................................................23

    Statement of the standard or scope of review................................23

    A.   The statutory framework for CDP determinations ..............24

    B.   The Tax Court correctly held that Appeals did not abuse its discretion in rejecting the Estate's offer-in-compromise..............................................................26

        1.   Appeals correctly considered Frese's potential liability under 31 U.S.C. § 3713 ...................................29

Page(s)

2.     Appeals also correctly considered the children's potential liability under I.R.C. § 6324(a)(2) ............... 36

C.     The Estate's arguments regarding purported legal errors committed by Appeals in rejecting the offer-in-compromise are without merit ............................................ 38

1.     Appeals properly considered the assets distributed by Frese ........................................................................ 38

2.     Frese's claim of reliance on counsel is inapt ................ 46

3.     Settlement Office Tevis was not required to investigate whether Frese and the decedent's children were judgment proof ...................................... 52

Conclusion ........................................................................................ 56
Certificate of bar membership ......................................................... 57
Certificate of compliance ................................................................. 58
Certificate of service ......................................................................... 59

## TABLE OF AUTHORITIES

**Cases:**

*Alli v. Commissioner*,
    T.C. Memo. 2014-15 ..................................................................... 51
*Banks v. President United States*,
    858 F. App'x 490 (3d Cir. 2021) ............................................... 39, 42
*Baptiste v. Commissioner*,
    29 F.3d 1533 (11th Cir. 1994) ...................................................... 54
*Matter of Carlson*,
    126 F.3d 915 (7th Cir. 1997) ........................................................ 33
*Christopher Cross, Inc. v. United States*,
    461 F.3d 610 (5th Cir. 2006) ........................................................ 27

## Cases (continued):                                    **Page(s)**

*Crimi v. Commissioner,*
    T.C. Memo. 2013-51 .................................................. 51

*Dalton v. Commissioner,*
    682 F.3d 149 (1st Cir. 2012) .............................. 23, 52

*Est. of Cutler v. Commissioner,*
    5 T.C. 1304 (1945), *aff'd sub nom Newton Tr. Co. v.*
    *Commissioner*, 160 F.2d 175 (1st Cir. 1947) .............. 45

*Est. of Duncan v. Commissioner,*
    890 F.3d 192 (5th Cir. 2018) ............................... 33

*Est. of Frost v. Commissioner,*
    T.C. Memo. 1993-94,
    1993 WL 75053 (Tax Ct. 1993) ........................... 51

*Est. of Lee v. Commissioner,*
    T.C. Memo. 2009-84,
    2009 WL 1118876 (Tax Ct. 2009) ...................... 48-49

*Matter of Est. of Ross,*
    No. A-5237-17T1, 2019 WL 1492691
    (N.J. Super. Ct. App. Div. Apr. 3, 2019) .................. 43

*Freytag v. Commissioner,*
    89 T.C. 849 (1978), *aff'd*, 904 F.2d 1011 (5th Cir.
    1990), *aff'd*, 501 U.S. 868 (1991) .......................... 51

*Irving Tr. Co. v. Commissioner,*
    36 B.T.A. 146 (1937) .......................................... 50

*Johnson v. Commissioner,*
    136 T.C. 475 (2011), *aff'd,*
    502 F. App'x 1 (D.C. Cir. 2013) ..................... 28-29, 53

*King v. United States,*
    379 U.S. 329 (1964) .......................................... 43

*Estate of Kyoung Lee, et al. v. United States,*
    No. 2:12-cv-01462-KM-MAH (D.N.J.),
    Doc. 32 (June 30, 2014) ....................................... 7

*Estate of Lee v. Commissioner,*
    No. 10-2606 (3d Cir.) ........................... 3, 5-6, 8, 10

## Cases (continued):                    **Page(s)**

*Estate of Lee v. Commissioner*,
No. 14511-06 (Tax Ct.) .......................................................... 3, 5, 32

*Leigh v. Commissioner*,
72 T.C. 1105 (1979) ................................................................ 31, 50

*Little v. Commissioner*,
113 T.C. 474 (1999) ................................................................. 47-48

*Living Care Alt. of Utica, Inc. v. United States*,
411 F.3d 621 (6th Cir. 2005) .................................. 23-26, 39, 42

*Marks v. Commissioner*,
947 F.2d 983 (D.C. Cir. 1991) ............................................... 33

*Murphy v. Commissioner*,
469 F.3d 27 (1st Cir. 2006) ............................................ 24, 27-29

*Narin v. Lower Merion Sch. Dist.*,
206 F.3d 323 (3d Cir. 2000) ................................................... 36

*Neonatology Assocs., P.A. v. Commissioner*,
115 T.C. 43 (2000), *aff'd*,
299 F.3d 221 (3d Cir. 2002) ................................................... 51

*New v. Commissioner*,
48 T.C. 671 (1967) .................................................................. 50

*Newberry v. Neeld*,
46 N.J. Super. 216 (App. Div. 1957) ................................... 44

*Olsen v. United States*,
414 F.3d 144 (1st Cir. 2005) ................................................. 23

*Orum v. Commissioner*,
412 F.3d 819 (7th Cir. 2005) ........................................... 24, 52

*In re Pransky*,
318 F.3d 536 (3d Cir. 2003) .................................................. 33

*Riggs v. Del Drago*,
317 U.S. 95 (1942) .................................................................. 43

*Roth v. Commissioner*,
922 F.3d 1126 (10th Cir. 2019) ............................................ 33

*Salazar v. Commissioner*,
95 T.C.M. (CCH) 1149 (2008), *aff'd*,
338 F. App'x 75 (2d Cir. 2009) ......................................... 29, 55

*Schwartz v. Commissioner*,
348 F. App'x 806 (3d Cir. 2009) ...................................... 23-24, 52

**Cases (continued):**                                                **Page(s)**

*Schwartz v. Commissioner,*
   95 T.C.M. (CCH) 1427 (2008),
   *aff'd*, 348 F. App'x 806 (3d Cir. 2009) ............................................. 28

*Klamath Strategic Inv. Fund ex rel. St. Croix*
   *Ventures v. United States,*
   568 F.3d 537 (5th Cir. 2009) ........................................................ 51

*TOT Prop. Holdings, LLC v. Commissioner,*
   1 F.4th 1354 (11th Cir. 2021) ....................................................... 33

*Tucker v. Commissioner,*
   506 F. App'x 166 (3d Cir. 2012.) ..................................... 23, 39, 42

*United States v. Bartlett,*
   186 F. Supp. 2d 875 (C.D. Ill. 2002) ............................................. 46

*United States v. Botefuhr,*
   309 F.3d 1263 (10th Cir. 2002) ..................................................... 37

*United States v. Geneviva,*
   1993 WL 597442 (W.D. Pa. Apr. 14, 1993),
   *aff'd*, 16 F.3d 522 (3d Cir. 1994) ................................................. 37

*United States v. Golden Acres Inc.,*
   684 F. Supp. 96 (D. Del. 1988) ................................................. 46-47

*United States v. MacIntyre*, No. CIV.A H-10-2812,
   2012 WL 2403491 (S.D. Tex. June 25, 2012) .............................. 47

*United States v. Marshall,*
   798 F.3d 296 (5th Cir. 2015) .................................................. 47, 51

*United States v. Moore,*
   423 U.S. 77 (1975) ...................................................................... 30

*United States v. Moriarty,*
   8 F.3d 329 (6th Cir. 1993) ........................................................... 30

*United States v. Renda,*
   709 F.3d 472 (5th Cir. 2013) ............................................. 46-47, 51

*United States v. Westchester Fire Ins. Co.,*
   478 F.2d 133 (2d Cir. 1973) ......................................................... 30

*Viles v. Commissioner,*
   233 F.2d 376 (6th Cir. 1956) ........................................................ 50

15256041.1

**Statutes:**                                                                **Page(s)**

Internal Revenue Code (26 U.S.C.):

§§ 2034 through 2042 ............................................. 37, 45

§ 6201(a) ...................................................................... 24

§ 6303 ........................................................................... 24

§ 6320 ........................................................................... 25

§ 6320(a)(3)(B) ............................................................ 25

§ 6320(b)(1) ................................................................. 25

§ 6320(c) ................................................................. 25, 34

§ 6321 ........................................................................... 24

§ 6323(a) ...................................................................... 24

§ 6324 ........................................................................... 37

§ 6324(a)(2) ..................... 12, 15, 21, 36-37, 44-45, 53-55

§ 6330 ........................................................................... 21

§ 6330(c)(1) ................................................................. 25

§ 6330(c)(2)(A) ............................................................ 25

§ 6330(c)(2)(B) ............................................................ 25

§ 6330(c)(3)(C) ............................................................ 26

§ 6330(c)(4)(A) ............................................................ 25

§ 6330(d)(1) .............................................................. 2, 26

§ 6330(e) ................................................................. 25, 34

§ 6501 ........................................................................... 37

§ 6502 ........................................................................... 37

§ 6502(a)(1) ................................................................. 19

§ 6651(a)(1) ................................................................... 5

§ 6662 ....................................................................... 5, 49

§ 6662(a) ...................................................................... 49

§ 6664(c) ...................................................................... 51

§ 6664(c)(1) ................................................................. 49

§ 6901 ............................................... 15, 19, 28, 35

§ 6901(c)(3) ............................................................ 19, 34

§ 6901(f) ...................................................................... 34

§ 7122 ........................................................................... 27

§ 7122(a) ................................................................. 16, 27

§ 7482(a)(1) ................................................................... 2

§ 7483 ............................................................................. 2

**Statutes (continued):** **Page(s)**

28 U.S.C.:
  § 2415(h) ................................................................... 19
  § 2415's ...................................................................... 18

31 U.S.C.:
  § 3713 .............................11, 13-16, 19, 21, 29-30, 32, 34, 36, 38-39,
                                         41, 45-48, 51, 53
  § 3713(a) ................................................................... 48
  § 3713(a)(1)(A)(I) ...................................................... 29
  § 3713(b) ............................................................... 17, 30

**Miscellaneous:**

Fed. R. App. P.:
  Rule 13(a) .................................................................... 2
  Rule 42(b) ................................................................. 3, 5

Rev. Proc. 2003-71 § 4.02(2) ......................................27-29

Treasury Regulations (26 C.F.R.):
  § 20.2002-1 ............................................................... 31
  § 301.6320-1(e) ........................................................ 25
  §§ 301.6320-1(e)(3) .................................................. 26
  § 301.6330-1(f)(2) ......................................... 26, 39, 42
  § 301.6901-1(c)(4) .................................................... 19
  § 301.7122-1 ............................................................. 27
  § 301.7122-1(b)(2) ............................................. 16, 27
  § 301.7122-1(c)(1) ................................................... 27

15256041.1

# GLOSSARY

| | |
|---|---|
| Appeals | Internal Revenue Service Independent Office of Appeals |
| CDP | Collection Due Process |
| Commissioner | Appellee Commissioner of Internal Revenue |
| Decedent | Decedent Kwang Lee |
| Estate | Appellant Estate of Kwang Lee |
| Frese | Executor Anthony J. Frese |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRM | Internal Revenue Manual |
| IRS | Internal Revenue Service |
| Kyoung | Decedent's wife Kyoung Lee |
| Priority Statute | 31 U.S.C. § 3713 |
| Pugh | Revenue Officer Chris Pugh |
| Tevis | Settlement Officer Mario Tevis |
| Treas. Reg. | Treasury Regulations (26 C.F.R.) |

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

—————————

### No. 21-2921

## ESTATE OF KWANG LEE, Deceased, Anthony J. Frese, Executory,

### Petitioner-Appellant

### v.

## COMMISSIONER OF INTERNAL REVENUE,

### Respondent-Appellee

—————————

## ON APPEAL FROM THE DECISION OF THE UNITED STATES TAX COURT

—————————

## BRIEF FOR THE APPELLEE

—————————

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

On September 20, 2018, after conducting an administrative

collection due process (CDP) hearing, the Internal Revenue Service

(IRS) Office of Appeals (Appeals) mailed a notice of determination

(collection determination or determination letter) to appellant Estate of

Kwang Lee (the Estate) approving the filing of a lien as part of

collecting the Estate's unpaid federal estate-tax liability.  (A.78.)[1]  On

October 18, 2020, within 30 days, the Estate filed a timely petition with

the Tax Court challenging that determination.  (A.26.)  The Tax Court

had jurisdiction under I.R.C. (26 U.S.C.) § 6330(d)(1).

On July 20, 2021, the Tax Court (Judge Greaves) issued a

memorandum opinion upholding the Appeals determination that the

proposed lien collection action could proceed.  (A.4.)  A corresponding

decision was entered by the Tax Court on July 22, 2021.  (A.3.)  The Tax

Court's decision disposed of all claims of all parties and therefore was

final and appealable.  On October 7, 2021, within 90 days after entry of

the decision, *see* I.R.C. § 7483 and Fed. R. App. P. 13(a), the Estate filed

a timely notice of appeal.  (A.2.)  This Court has jurisdiction over the

appeal pursuant to I.R.C. § 7482(a)(1).

## STATEMENT OF THE ISSUE

Whether Appeals acted within its discretion in rejecting the

Estate's proposed offer-in-compromise, because the offer did not reflect

the reasonable collection potential of the case.

---

[1] "A." references are to the appendix filed by appellant.  "Br."
references are to appellant's brief.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The Estate previously petitioned the Tax Court for a redetermination of estate-tax deficiencies asserted by the Commissioner after an examination of the Estate's estate-tax return. *See Estate of Lee v. Commissioner*, No. 14511-06 (Tax Ct.) ("*Estate of Lee I*"). On March 24, 2010, the Tax Court issued a decision finding a deficiency in estate tax in the amount of $536,151.35. *See id.,* Doc. 79. On May 28, 2010, the Estate appealed to this Court. *See id.,* Doc. 80; *see also Estate of Lee v. Commissioner*, No. 10-2606 (3d Cir.). On July 9, 2014, after the Estate moved to voluntarily withdraw the appeal, this Court dismissed the appeal pursuant to Fed. R. App. P. 42(b). *See Estate of Lee v. Commissioner*, No. 10-2606, Order Dated July 9, 2014 (3d Cir.).

## STATEMENT OF THE CASE

### A.    The Estate's unpaid federal estate-tax liabilities

Kwang Lee (decedent), a resident of New Jersey, died testate on April 5, 2000. (A.266.) The Estate filed a federal estate-tax return (Form 706) in May 2003. The return showed a total gross estate of $3,885,719.51 less exclusions of $2,510,108.58. (A.289.) Included in those claimed exclusions was $1,618,225 for "bequests to surviving spouse." (*See* A.291, Part 5, line 20.) The Estate claimed this exclusion

-4-

despite the fact that the decedent's spouse, Kyoung Lee (Kyoung), had in fact pre-deceased him.  Of the total gross estate of $3,885,719.51, the Estate reported $2,415,669.53 as probate property, including (1) $725,000 in real estate (Schedule A); (2) $1,498,864.26 in stocks and bonds (Schedule B); and (3) $191,835.27 in "mortgages, notes, and cash" (Schedule C).  (*See* A.291.)  The remaining $1,470,019.00 was reported as non-probate property, including (1) life insurance death benefits in the amount of $1,254,000, listing decedent's children, Sandra Less and David Lee, as beneficiaries (Schedule D); (2) retiree death benefits of $14,000 (Schedule F); and (3) annuities totaling $202,019.00, listing the beneficiaries as "children of decedent equally" (Schedule I).  (*See* A.291; *see also* A.339.)  The stocks and bonds reported as part of the probate estate on Schedule B included (1) Series E and EE savings bonds; (2) shares of Johnson & Johnson common stock; and (3) both vested and non-vested options (with various vesting dates) to purchase Johnson & Johnson stock at various strike prices.  (*See* A.293.)  The Estate reported the total aggregate value of the vested stock options to be

$1,365,644.  (A.293.)[2]  The Estate reported the value of the unvested

stock options to be $0 at that time.  (A.293.)

The Estate's return was selected for examination.  In April 2006,

the IRS mailed to the estate's executor, Anthony J. Frese, a notice of

deficiency which determined a deficiency in estate tax in the amount of

$1,020,129.00 plus additions to tax under I.R.C. §§ 6651(a)(1) and 6662.

(A.132.)  In July 2006, the Estate petitioned the Tax Court for a

redetermination of the asserted deficiencies and additions to tax.  *See*

*Estate of Lee I.*  On March 24, 2010, the Tax Court issued a decision

finding a deficiency in estate tax in the amount of $536,151.35.  *See id.,*

Doc. 79.  On May 28, 2010, the Estate appealed to this Court.  *See id.,*

Doc. 80; *see also Estate of Lee v. Commissioner*, No. 10-2606 (3d Cir.).

On July 9, 2014, after the Estate moved to voluntarily withdraw the

appeal, this Court dismissed the appeal pursuant to Fed. R. App. P.

---

[2] The Estate included these vested stock options (valued by the
Estate in aggregate at $1,365,644) in its calculation of its claimed
exclusion for bequests to Kyoung (who had in fact pre-deceased
decedent).  (*See* A.303, Schedule M, "description of property interests
passing to surviving spouse.")  The Estate separately included in its
calculation of bequests to Kyoung a "Johnson & Johnson Certificate of
Extra Compensation #1003981 payable to estate of Kwang Lee" which it
valued at $121,800.  (*See* A.303.)  The Estate apparently derived this
valuation from a 2001 Johnson & Johnson memo.  (*See* A.333.)

-6-

42(b).  *See Estate of Lee*, No. 10-2606, Order Dated July 9, 2014 (3d Cir.).

Johnson & Johnson agreed to extend the vesting of the unvested stock options discussed above (A.323), and throughout the period 2004 to 2010, the Estate exercised the stock options in a series of transactions (*see* A.443-A.450).  Additionally, during the period 2003 through 2007, the Estate made cash distributions to the decedent's children totaling $1,045,000.  (*See* A.452.)  Of that total aggregate amount, the Estate paid $640,000 to the children on February 28, 2007—after the IRS issued its notice of deficiency to the Estate, via Frese, its executor, and after the Estate, acting through its executor, filed its petition for redetermination in the Tax Court.  (A.452.)

## B.   The CDP proceedings

The estate tax remained unpaid, and, in April 2013, the IRS sent the Estate a Notice of Federal Tax Lien, advising it that a notice of federal tax lien had been filed and indicating that the then-outstanding amount owed by the Estate was approximately $882,000 and that the Estate could request a CDP hearing with Appeals.  (A.115-A.117.)  The Estate requested a CDP hearing, indicating its intent to seek both an

installment agreement and an offer-in-compromise.  (A.99-A.107.)  The

Estate argued that the lien was invalid because the Estate's liability

had not yet been determined and because the Estate (incorrectly)

expected a credit against its liability as a result of certain litigation

regarding Kyoung's estate.  (*See* A.105.)[3]

After the Estate submitted certain information and requested a

face-to-face conference (*see* A.166-A.195), the matter was transferred to

Settlement Officer Mario Tevis at Appeals in Newark, New Jersey.  In

September 2013, Tevis sent the Estate a letter scheduling a conference

for October 2013.  (A.197-A.198.)  Tevis wrote that he would consider

any legitimate issues the Estate wished to discuss, including whether

---

[3] The Estate's estate-tax return claimed exclusions from the gross estate for bequests to Kyoung, even though she predeceased him, relying on a clause in decedent's will that Kyoung should be treated as surviving him if she died within 6 months before his death.  (*See* A.102.) These exclusions were disallowed as invalid for federal estate-tax purposes, resulting in adjustments to the estate-tax liabilities of the decedent's estate (increase) and Kyoung's estate (decrease).  (*See id.*) The Tax Court sustained the disallowances, including the increase in decedent's estate-tax liabilities.  Kyoung's estate sought a refund; its refund lawsuit was ultimately dismissed.  (*See* A.104; *See Estate of Kyoung Lee, et al. v. United States*, No. 2:12-cv-01462-KM-MAH (D.N.J.), Doc. 32 (Stipulation and Order of Dismissal) (June 30, 2014).) Thus, the Estate was incorrect to assert that its liabilities would be offset with the refund sought by Kyoung's estate (A.104-A.105.)

the IRS met all requirements of any applicable law or administrative procedures, collection alternatives, and challenges to the appropriateness of the collection action.  (*Id.*)

Before the scheduled conference, the Estate's representatives submitted an offer-in-compromise, but the CDP hearing was placed in suspense, (*see* A.88), pending resolution of Kyoung's estate-tax refund suit (*See supra* at p. 7, n. 3.)  After that suit was dismissed in June 2014, the CDP hearing recommenced.

The Estate then submitted a revised Form 433-A (Collection Information Statement) showing the Estate's sole asset to be a checking account with a balance of $182,940.67.  (A.202-A.207.)  The Estate also submitted a Form 656 (Offer In Compromise) to compromise the Estate's outstanding estate-tax liability for $182,940 (the balance of the checking account) based upon doubt as to collectibility.  (A.217-A.223.) In February 2017, Tevis forwarded the Estate's offer to the IRS collection division for processing where it was assigned to Revenue Officer Chris Pugh.  (A.90; A.235.)

In October 2017, upon Pugh's request, the Estate provided certain information and documents, including, among other things, a copy of

the estate-tax return and schedules, as well as an updated accounting of

the disbursement of all Estate property.  (*See* A.235; A.238-A.574.)

That submission included various accounting statements for the Estate,

which, among other things, detailed the sale of Johnson & Johnson

shares, from 2003 to 2012, and the cash distributions to decedent's

children, explained above (at p. 6).  (*See* A.452; A.496-A.508.)

Pugh took several steps to evaluate the Estate's offer-in-

compromise.  After reviewing the Estate's submission, Pugh discussed

the matter with an IRS estate tax collection specialist.  That specialist

advised Pugh that the Estate's executor had made distributions to the

Estate's beneficiaries (the children) that could be recovered through

suits against the executor and the children.  Accordingly, the specialist

advised that those distributions should be considered as part of the

reasonable collection potential of the Estate for purposes of evaluating

the offer-in-compromise.  (A.587.)

In January 2018, Pugh's group manager sent the Estate a letter

explaining his decision to preliminarily reject the offer-in-compromise

because the reasonable collection potential was $1,227,940 (including

cash on hand of $182,940 and potential transferee collection from the

children of the $1,045,000 in distributions from 2003 through 2007), far higher than the offer-in-compromise and enough to fully satisfy the estate-tax liability. (A.579.) The letter noted that a final decision would be made by Appeals. (*Id.*).

The Estate wrote to Tevis to dispute that preliminary rejection. (A.590.) The Estate did not dispute that distributions had been made to the children from Estate assets. Rather, it argued that the calculation of reasonable collection potential should not include the distributions to the children, based on the fact that (according to the Estate) only distributions within three years of the offer-in-compromise should be considered. (*See* A.592.) The Estate also argued that the statute of limitations for bringing suit against the executor and children had expired. (A.593-A.595.)

On May 24, 2018, Tevis informed the Estate's representatives that he would seek advice from the IRS Office of Chief Counsel regarding the issues raised in the Estate's letter. (*See* A.92.) Between June and August 2018, Tevis had various discussions with an Office of Chief Counsel attorney about the case. (*See* A.93.)

In August 2018, the Office of Chief Counsel sent Tevis written advice opining that rejection of the offer-in-compromise was proper because the Estate's reasonable collection potential exceeded the amount offered. (A.605.) IRS counsel advised that the reasonable collection potential "includes amounts that may be collected from third parties through administrative and judicial means, including suits to establish fiduciary [against the executor] and transferee [against the children] liability." (A.605-A.606.) Counsel opined that "the facts of this case make clear that the Internal Revenue Service may assert fiduciary liability under 31 U.S.C. § 3713 against Anthony Frese as executor of the estate." (A.608.) This is because Frese distributed $640,000 to the children before paying the estate-tax liability, thereby rendering the Estate insolvent, at a time when Frese had knowledge of the estate-tax liability. (A.608-A.609.) Further, the statute of limitations for such a suit had not expired, because it was suspended during the pendency of the CDP hearing. (A.607.) Counsel also opined that the IRS could "also assert transferee liability under [I.R.C. §] 6324(a)(2) against the beneficiaries of the Estate [the children] with respect to the transfer of non-probate property." (A.609.) Counsel

explained that "a total of $1,470,019 of non-probate property was transferred to the decedent's three children" and under § 6324(a)(2) "each of the three children are personally liable for the unpaid estate tax to the extent of the non-probate property they received."[4]  (*Id.*) Accordingly, counsel advised, the Estate's reasonable collection potential was $2,297,959.[5]  Counsel concluded:  "Because the Estate's reasonable collection potential far exceeds the amount of the Estate's unpaid tax liability, which is $443,931.33, the offer in compromise was properly rejected."  (A.609.)

On September 20, 2018, Appeals issued its Notice of Determination Concerning Collection Action sustaining the filing of the notice of federal tax lien and the rejection of the offer-in-compromise. (A.78.)  The notice attached Tevis's summary and recommendation

---

[4] As explained *supra* at p. 4, the children received non-probate property in the form of life insurance, retiree death benefits, and annuities.  (*See* A.291; *see also* A.339.)

[5] This is the sum of Estate assets ($182,940) plus amounts collectible from Frese ($645,000), and from the children ($1,470,019). (A.609.)  This amount is overstated by $5,000, because the February 2007 distribution by Frese was $640,000, not $645,000 as stated in Chief Counsel's memorandum.  This difference is immaterial to the analysis.

-13-

(A.80) in which Tevis confirmed that he had "verified the requirements of any applicable law or administrative procedure were met" and that the "IRS followed all legal and procedural requirements, and the actions taken or proposed were appropriate under the circumstances." (A.82.)

### C.    The proceedings in the Tax Court

#### 1.    The parties' arguments

The Estate petitioned for review in the Tax Court. (A.26.) In its petition, the Estate admitted that it had "distributed assets to the beneficiaries in 2003, 2005, 2006 and 2007" but asserted that those distributions could not be included in the calculation of reasonable collection potential because they were more than three years before the offer-in-compromise. (A.30.) It also asserted that the statute of limitations for transferee liability had expired. (A.30-A.31.)

The Commissioner moved for summary judgment. (A.48.) He argued that Appeals had not abused its discretion in rejecting the offer-in-compromise because it appropriately considered amounts collectible from Frese and the children in determining that the reasonable collection potential exceeded the offer. (A.64.) He argued that the IRS could assert fiduciary liability against Frese pursuant to 31 U.S.C.

§ 3713 because Frese—knowing of the estate-tax liability—distributed $640,000 to the children, rendering the Estate insolvent and unable to pay the estate-tax liability. (A.64.) He similarly argued that the children are liable for the unpaid estate tax to the extent of non-probate property they received, totaling $1,470,019. (A.65.) And he argued that the statutes of limitations for collection from Frese (as a fiduciary) and from the children (as beneficiaries) had not expired, because both were subject to the same general collection limitations period for the collection of the underlying tax, which was tolled during the pendency of the CDP hearing and the Tax Court proceedings. (A.62-A.64.)

The Estate objected to the Commissioner's motion. (A.611.) It admitted that Frese had made distributions of Estate assets to the beneficiaries totaling $1,045,000, $640,000 of which was distributed on February 28, 2007. (*See* A.615; A.645 ¶¶ 33, 34; A.646 ¶ 37; A.656.) But, it argued, these distributions were "irrelevant" under § 3713, because "a debt to the United States was not assessed at the time of the distributions." (A.615.) The Estate did *not* argue that those distributions were insufficient to "trigger" liability under § 3713 because they were not distributions of Estate assets. It also argued

that the statute of limitations for a suit against Frese under § 3713

expired on February 28, 2013, six years after the last distribution on

February 28, 2007.  (A.646; A.652-653.)  Similarly, the Estate argued

that the statute of limitations for transferee suits against the children

under I.R.C. § 6324(a)(2) had expired because, according to the Estate,

the IRS was required to make an assessment against the transferee

beneficiaries pursuant to I.R.C. § 6901 within one year after expiration

of the period of limitations for assessment against the transferor, and

that period, according to the Estate, expired in 2014.  (A.651-A.652.)

Finally, the Estate argued that Appeals abused its discretion because it

did not "determine the amounts, if any, actually collectable from third

parties."  (A.654.)  Although it had not made that argument during the

CDP hearing, the Estate argued in the Tax Court that Appeals should

have "investigate[d] the current value of the [non-probate] assets,

whether the alleged beneficiaries were still alive, and whether state law

would permit collection from them."  (A.656.)  It also argued for the first

time that Appeals should have "considered the financial status of those

third parties against whom claims could be made."  (*Id.*)

-16-

## 2.    The Tax Court's decision

The Tax Court granted the Commissioner's motion for summary judgment in a memorandum opinion.  (A.4.)  The Tax Court explained that a settlement officer has substantial discretion in determining whether an offer-in-compromise should be accepted or rejected.  (A.10.)  The court further explained that the Secretary "may compromise a tax liability based on doubt as to collectibility [as the estate proposed here] where the taxpayer's assets and income render full collection unlikely."  (A.11, citing I.R.C. § 7122(a) and Treas. Reg. 301.7122-1(b)(2).)  "Conversely the IRS may reject an [offer-in-compromise] where the taxpayer's [reasonable collection potential] is greater than the amount he proposes to pay."  (*Id.*).  The court then considered whether Appeals had abused its discretion in rejecting the offer-in-compromise based upon its determination that the Estate's reasonable collection potential was higher than the amount offered.

The court first examined whether there was the potential to recover from Frese pursuant to 31 U.S.C. § 3713.  (A.12.)  That section imposes liability on an executor who pays a debt (including a beneficiary's distributive share of an estate) of an estate before

satisfying a claim owed to the United States (including federal estate-tax liability).  (A.12-A.13.)  *See*  31 U.S.C. § 3713(b).  Personal liability is imposed where the distribution either is made at a time that the estate is insolvent or renders the estate insolvent, and the executor has knowledge or notice of the government's claim.  (A.13.)  *See* 31 U.S.C. § 3713(b).

The court found that there was "no genuine dispute that Mr. Frese, as executor of the estate, distributed estate assets that rendered the estate unable to satisfy [the] deficiency claim."  (A.13.)  Indeed, as discussed above, the Estate had admitted that Frese distributed Estate assets in these amounts.  (*See* A.615; A.645 ¶¶ 33, 34; A.646 ¶ 37; A.656.)  But for the distribution of $640,000 in February 2007, the Estate could have satisfied its estate-tax liability.  (*Id.*)  And the court rejected the Estate's argument that Frese lacked adequate knowledge of the claim.  It held that a notice of deficiency with respect to estate-tax liabilities is sufficient to, at a minimum, place an executor "on notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the Government's unpaid claim."  (A.14.)

-18-

The court also rejected the Estate's claim that Frese made the
February 2007 distribution under advice of counsel.  (A.15.)  First, the
Estate "offered no evidence to show that Mr. Frese relied upon the
advice of the estate's tax adviser as it pertained to his decision to make
distributions from the estate, including the February 2007
distribution."  (A.15-A.16.)  Second, "Mr. Frese, a licensed attorney and
judge, made the February 2007 distribution with direct knowledge that
[the IRS] had determined an estate tax deficiency against the estate
([the IRS] mailed him the notice of deficiency in April 2006) and that an
action concerning that deficiency was pending before [the Tax Court]."
(A.16.)  "Under these circumstances," the court explained, "Mr. Frese
made the February 2007 distribution at his own peril, and any advice
he may have received in this regard cannot absolve him from liability."
(A.16.)

Next, the court rejected the Estate's argument that the statute of
limitations for a suit against Frese had expired.  (A.17.)  The Estate's
reliance on 28 U.S.C. § 2415's general six-year statute of limitations
was misplaced because that provision expressly does not apply to
"actions brought under the Internal Revenue Code or incidental to the

-19-

collection of taxes imposed by the United States." (A.17-A.18.) *See* 28 U.S.C. § 2415(h). Rather, under I.R.C. § 6901, "the period of limitations for assessment against a fiduciary under [31 U.S.C. § 3713] is 'not less than 1 year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the later.'" (A.17, quoting I.R.C. § 6901(c)(3) and citing Treas. Reg. § 301.6901-1(c)(4).) And the period for collection of estate taxes is 10 years. I.R.C. § 6502(a)(1). Here the estate tax was assessed—and the 10-year statute of limitations began to run—in July 2010. Further, the statute was suspended during the pendency of the CDP proceedings, including the petition to the Tax Court, and thus was plainly "open when the [Settlement Office] determined the estate's [reasonable collection potential] calculation in 2018." (A.18.)

Finally, the court rejected the Estate's argument that Tevis "was required to independently investigate the amounts, if any, actually collectible from third parties[.]" (A.19.) Not only did the Estate cite no rule requiring "such exhaustive action" but "the record shows that the [Settlement Officer] acted diligently in considering the estate's concerns

by consulting with [the IRS's] Collection Division and Office of Chief

Counsel in reaching his conclusion." (A.19-A.20.)

Accordingly, the court granted the Commissioner's motion for

summary judgment, because it did not find Appeals' "decision to reject

the estate's OIC and sustain [the] lien action to have been undertaken

in an arbitrary manner or made without a sound basis in fact or law."

(A.20.)[6]

## SUMMARY OF ARGUMENT

After the Estate failed to fully pay the estate tax that the Tax

Court determined it owed, the IRS began collection efforts through the

filing of a notice of federal tax lien, resulting in the Estate requesting a

CDP hearing before Appeals. During that hearing, the Estate made an

offer-in-compromise to settle its liabilities for the assets remaining in

the Estate, approximately $182,000, based on doubt as to collectibility.

After determining, however, that the Estate's offer was not

commensurate with reasonable collection potential, Appeals rejected

---

[6] Because it found that the rejection of the offer-in-compromise
was justified by the potential to collect from Frese, the court found it
unnecessary to consider whether the IRS could potentially collect from
the children as well. (A.19.)

the offer, and determined that the filing of the notice of federal tax lien was proper.  The Estate contested the Appeals determination in the Tax Court, but the court concluded that Appeals had not abused its discretion in rejection the offer-in-compromise.  The Tax Court's decision is correct and should be affirmed.

In a CDP hearing pursuant to I.R.C. § 6330, a taxpayer may offer alternatives to collection, including an offer-in-compromise.  The record establishes that Appeals gave full and proper consideration to the Estate's offer-in-compromise before rejecting it.  Appeals determined that there were two additional amounts that should be included in the reasonable collection potential:  (1) fiduciary liability in the amount of $640,000, based on distributions that the Estate's executor made which rendered the Estate insolvent, with actual knowledge of the Government's claim for estate taxes; and (2) transferee liability exceeding $1.4 million based on non-probate transfers made to the estate's beneficiaries, the decedent's children.  Appeals obtained an opinion from IRS Chief Counsel advising that the unpaid estate-tax liability could be collected from the executor pursuant to 31 U.S.C. § 3713 and from the children pursuant to I.R.C. § 6324(a)(2).

Against this background, Appeals determined that the Estate had offered less than the reasonable collection potential of the case. That determination, which was based on consideration of all of the available information, was eminently reasonable. Because the IRS has a long-standing policy that it will not accept a compromise offer for less than the reasonable collection potential of the case, Appeals acted well within its discretion in rejecting the Estate's offer-in-compromise as an alternative to the filing of the notice of federal tax lien. The Tax Court correctly upheld that determination, rejecting the Estate's incorrect arguments that the third-party claims were barred as untimely and that the claim of fiduciary liability was barred by an advice-of-counsel defense. The Estate reiterates these incorrect arguments, which should again be rejected, and also asserts several new arguments, which this Court should refuse to consider and which are likewise incorrect. This Court should affirm the reasonable determination of the Office of Appeals.

# ARGUMENT

## Appeals did not abuse its discretion in rejecting the Estate's offer-in-compromise and sustaining the IRS's proposed collection action

### Statement of the standard or scope of review

This Court exercises plenary review over the Tax Court's grant of summary judgment. *Tucker v. Commissioner*, 506 F. App'x 166, 167 (3d Cir. 2012.) Where, as here, the underlying tax liability is not in issue in a CDP proceeding, courts review the determination of Appeals only for an abuse of discretion. *Schwartz v. Commissioner*, 348 F. App'x 806, 808 (3d Cir. 2009). In CDP cases, the abuse-of-discretion standard is even more deferential than it is in the case of more formal agency actions. *Id.*; *see also Olsen v. United States*, 414 F.3d 144, 151 (1st Cir. 2005); *Living Care Alt. of Utica, Inc. v. United States*, 411 F.3d 621, 625 (6th Cir. 2005). This Court "will 'set aside determinations reached by the IRS during the CDP process only if they are unreasonable in light of the record compiled before the agency.'" *Tucker*, 506 F. App'x at 168 (quoting *Dalton v. Commissioner*, 682 F.3d 149, 154-55 (1st Cir. 2012)). Such "judicial review extends only to those issues raised before the Office of Appeals." *Id.*

Further, "[c]ourts have consistently held that the IRS is owed considerable deference when considering the adequacy of a taxpayer's proposed offer-in-compromise." *Schwartz*, 348 F. App'x at 808. Thus, courts "'will only disturb the rejection of [the appellant's] offer-in-compromise if it represents a clear abuse of discretion in the sense of taxpayer abuse and unfairness by the IRS.'" *Id.* (quoting *Murphy v. Commissioner*, 469 F.3d 27, 32 (1st Cir. 2006)); *accord Living Care*, 411 F.3d at 631. If there are grounds "on which the Appeals Officer could have validly rejected" a proposed collection alternative, a reviewing court will not examine the "tax enforcement details" concerning the rejection decision. *Living Care*, 411 F.3d at 631; *see also Orum v. Commissioner*, 412 F.3d 819, 820-21 (7th Cir. 2005).

## A.    The statutory framework for CDP determinations

When a taxpayer neglects or refuses to pay an assessed federal tax liability after notice and demand, *see* I.R.C. §§ 6201(a), 6303, a lien arises in favor of the United States upon all of the taxpayer's "property and rights to property," *see* I.R.C. § 6321. The IRS may protect the priority of its lien by filing a notice of federal tax lien, *see* I.R.C. § 6323(a), but must give notice of such filing to the person upon whose

property the lien has arisen, *see* I.R.C. § 6320.  This notice must inform

the person of the right to seek a hearing before Appeals.  *See* I.R.C.

§§ 6320(a)(3)(B), (b)(1).  If the taxpayer files a timely request for a CDP

hearing, collection of the delinquent tax is stayed during the pendency

of the hearing and during any judicial review of the resulting

determination of Appeals.  I.R.C. §§ 6320(c), 6330(e).

The purpose of a CDP hearing is to review the propriety of the

proposed collection action.  *See Living Care*, 411 F.3d at 624-25.  As part

of the hearing, the appeals officer is required to "obtain verification

from the Secretary that the requirements of any applicable law or

administrative procedure have been met."  I.R.C. § 6330(c)(1).  At the

hearing, the taxpayer may raise "any relevant issue," including "offers

of collection alternatives, which may include . . . an installment

agreement or an offer-in-compromise."  I.R.C. § 6330(c)(2)(A); *see* Treas.

Reg. § 301.6320-1(e).  But the taxpayer may re-raise a fully litigated

issue, I.R.C. § 6330(c)(4)(A), nor may it challenge the "existence or

amount of the underlying tax liability" if it received a statutory notice of

deficiency or otherwise had an opportunity to dispute its tax liability,

I.R.C. § 6330(c)(2)(B).  Here, the Estate had received such a deficiency

notice and, in fact, litigated its tax liability, resulting in a final Tax Court decision.

Following the hearing, the Appeals Office sends the taxpayer a "notice of determination" that takes into account the "verification" of compliance with applicable law and procedure, the issues raised by the taxpayer, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." I.R.C. § 6330(c)(3)(C); *see* Treas. Reg. §§ 301.6320-1(e)(3) (Q&A-E8), 301.6320-1(f)(1). Within 30 days after the date of the notice, the taxpayer may seek judicial review of an adverse determination in the Tax Court. I.R.C. § 6330(d)(1). The taxpayer may not raise before the court, however, any issues that he did not raise during the hearing before Appeals. *Living Care*, 411 F.3d at 625; Treas. Reg. § 301.6330-1(f)(2) (Q&A-F3).

## B. The Tax Court correctly held that Appeals did not abuse its discretion in rejecting the Estate's offer-in-compromise

In this case, the Estate's core contention is that Appeals abused its discretion in determining that its offer to compromise its unpaid

-27-

outstanding federal estate-tax liability of approximately $444,000 for

$182,940.67 was not an acceptable alternative to collection via filing of

a notice of federal tax lien.  As we shall demonstrate, the Tax Court

correctly held that there was no abuse of discretion by Appeals in

rejecting the Estate's offer-in-compromise.

The circumstances under which the IRS may enter into an offer-

in-compromise are governed by I.R.C. § 7122 and Treas. Reg.

§ 301.7122-1.  The Commissioner may compromise a liability on the

ground of doubt as to collectibility when "the taxpayer's assets and

income are less than the full amount of the liability."  Treas. Reg.

§ 301.7122-1(b)(2); *see* I.R.C. § 7122(a).  Once doubt as to collectibility is

established, "the decision to accept or reject an offer to compromise . . .

is left to the discretion of the [IRS]."  Treas. Reg. § 301.7122-1(c)(1).

The IRS has set forth internal guidance for use of its employees to

determine whether an offer-in-compromise is adequate and should be

accepted to resolve a dispute, which, in part, requires Appeals to

determine whether the amount offered reflects the "reasonable

collection potential" of the case.  IRM 5.8.4.3 (9-24-2020); Rev. Proc.

2003-71 § 4.02(2); *see generally Murphy*, 469 F.3d at 33; *Christopher*

-28-

*Cross, Inc. v. United States*, 461 F.3d 610, 612-13 (5th Cir. 2006);

*Johnson v. Commissioner*, 136 T.C. 475, 486 (2011), *aff'd*, 502 F. App'x 1

(D.C. Cir. 2013).  The "reasonable collection potential" is defined as "the

amount that can be collected from all available means," and is generally

calculated using the following components of collectibility:  (1) assets;

(2) future income; (3) amount collectible from third parties; and

(4) assets and/or income that are available to the taxpayer, but are

beyond the reach of the Government.  IRM 5.8.4.3.1 (04-30-2015); *see*

Rev. Proc. 2003-71 § 4.02(2); *Schwartz v. Commissioner*, 95 T.C.M.

(CCH) 1427 n.4 (2008), *aff'd*, 348 F. App'x 806 (3d Cir. 2009).  As

regards amounts potentially collectible from third parties, the Manual

instructs agents to "include the value in computing [reasonable

collection potential] but not actually complete the administrative

actions required to establish the liability against the third party which

might include any of the following: initiating an IRC 6901

administrative assessment . . . or initiating a suit to establish

transferee liability."  IRM 5.8.4.21 (09-24-2020).

　　An offer-in-compromise may be rejected if the taxpayer's ability to

pay exceeds the amount offered.  *Murphy*, 469 F.3d at 33.  And the IRS

has stated a policy of generally rejecting any offer-in-compromise based on doubt as to collectibility that is less than the reasonable collection potential of the case.  Rev. Proc. 2003-71, 2003-2 C.B. 517, § 4.02(2); *Murphy*, 469 F.3d at 33; *Johnson*, 136 T.C. at 486; *Salazar v. Commissioner*, 95 T.C.M. (CCH) 1149 (2008), *aff'd*, 338 F. App'x 75 (2d Cir. 2009).

The Estate's central contention in the Tax Court was that Appeals had improperly taken into account the amount of unpaid estate-tax liability that potentially could be collected from the executor and the children as transferees of decedent's estate and, therefore, had abused its discretion in rejecting the Estate's offer-in-compromise.  The Tax Court correctly rejected that contention.

### 1.    Appeals correctly considered Frese's potential liability under 31 U.S.C. § 3713

Appeals correctly considered Frese's potential fiduciary liability pursuant to 31 U.S.C. § 3713 (the Priority Statute).  Under the Priority Statute, "[a] claim of the United States Government shall be paid first" if the debtor is insolvent and one of three triggering events occurs— here, when "the debtor without enough property to pay all debts makes a voluntary assignment of property."  31 U.S.C. § 3713(a)(1)(A)(I).  If

the debtor's representative pays "any part of a debt . . . before paying a claim of the Government," then the representative is "liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b).  The current Priority Statute was enacted in 1982, but its substantive provisions have been a part of federal law since 1799, and its roots extend to English common law.  *See* Act of Sept. 13, 1982, Pub. L. No. 97-258, § 3713, 96 Stat. 877, 972; *United States v. Moore*, 423 U.S. 77, 80-81 (1975).  The purpose of the Priority Statute is "to secure an adequate revenue to sustain the public burdens and discharge the public debts," and the statute is to be construed liberally in favor of the United States.  *Moore*, 423 U.S. at 81-82; *United States v. Moriarty*, 8 F.3d 329, 334 (6th Cir. 1993).  A cause of action against a representative under the Priority Statute is "wholly independent" from the cause of action against the debtor for the underlying claim.  *Moriarty*, 8 F.3d at 333; *see also United States v. Westchester Fire Ins. Co.*, 478 F.2d 133, 135 (2d Cir. 1973).

Thus, the Priority Statute imposes liability on an executor who pays a debt (including a beneficiary's distributive share of an estate) of an estate before satisfying a claim owed to the United States (including

federal estate-tax liability). As explained by the relevant regulation, "if the executor pays a debt due by the decedent's estate or distributes any portion of the estate before all the estate tax is paid, he is personally liable, to the extent of the payment or distribution, for so much of the estate tax as remains due and unpaid." Treas. Reg. § 20.2002-1. The statute imposes personal liability on an executor, who, with knowledge or notice of the government's claim, makes a distribution when an estate is insolvent or which renders an estate unable to pay the estate tax. *See Leigh v. Commissioner*, 72 T.C. 1105, 1109 (1979).

The record shows that Frese, as executor of the Estate, distributed to the decedent's children a total of $1,045,000 in cash payments. (*See, e.g.*, A.452.) Of that total, Frese distributed $640,000 in February 2007. (See A.452; A.599.) The Estate does not dispute that Frese made these distributions—indeed, it admits that he did.[7] (A.30; A.615; A.645; A.646; A.656.) When Frese made the February 2007 distribution, he

---

[7] Although the Estate argues on appeal that these were not distributions of Estate assets, it did not make that argument during the CDP hearing or in the Tax Court. It argued only that no debt to the Government had been established and that the statute of limitations had expired. (*See supra* at pp. 10, 14-15; *see also* A.615; A. 646; A.652-653.)

was already aware that the IRS had issued a notice of deficiency to the Estate in April 2006.  In fact, he was a named party in the Estate's Tax Court proceeding for a redetermination of that deficiency.  *See Estate of Lee I.*  The petition in that matter was filed in July 2006, seven months before Frese distributed $640,000 to the children.  And that $640,000 distribution rendered the Estate unable to satisfy its federal estate-tax liabilities.

Given these facts, it was wholly proper for Appeals to consider Frese's potential liability of $640,000 when evaluating the Estate's offer-in-compromise.  A suit against Frese under the Priority Statute could collect funds sufficient to satisfy the total outstanding estate-tax liability.  To ensure the reasonableness of this decision, Tevis consulted with the IRS's collection division, including an estate tax collection specialist (A.90; A.235), and obtained written advice from the Office of Chief Counsel advising him that amounts potentially recoverable from Frese in a suit under to § 3713 should be included in the calculation of reasonable collection potential.  (A.605.)

The only issue that the Estate raised during the CDP hearing in this regard was that under the Internal Revenue Manual Part 5.8.5.18,

-33-

"dissipated assets" should be included in a calculation of reasonable

collection potential only if they occurred within the previous three

years. (*See*, *e.g.*, A.591-92.) The Estate reiterates that argument in this

appeal (Br. 24-26), calling the three-year period an "administrative

statute of limitations" (Br. 2). This argument is wrong for multiple

reasons. First, "'procedures in the Internal Revenue Manual are

intended to aid in the internal administration of the IRS; they do not

confer rights on taxpayers.'" *In re Pransky*, 318 F.3d 536, 544 n.7 (3d

Cir. 2003) (quoting *Matter of Carlson*, 126 F.3d 915, 922 (7th Cir.

1997)). To the contrary, "it is well-settled . . . that the provisions of the

manual are directory rather than mandatory, are not codified

regulations, and clearly do not have the force and effect of law." *Marks

v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991); *accord TOT

Prop. Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1373 (11th Cir.

2021); *Roth v. Commissioner*, 922 F.3d 1126, 1134 (10th Cir. 2019); *Est.

of Duncan v. Commissioner*, 890 F.3d 192, 200 (5th Cir. 2018).

A purported "administrative statute of limitations" in the non-

binding Internal Revenue Manual cannot override statutory law. And,

as the Tax Court correctly held (A.18-A.19), the applicable statute of

limitations for a suit pursuant to § 3713 does not expire until the
expiration of the period for collection of the tax in respect of which such
liability arises. *See* I.R.C. § 6901(c)(3). In this case, the underlying
estate tax that is subject to the collection action was assessed in July
2010. (A.96.) Further, the running of the limitations period for
collection of the underlying estate tax has been tolled since the filing of
the Estate's request for a CDP hearing with the IRS in May 2013, and
currently remains tolled due to the Estate's petition for review of the
CDP hearing to the Tax Court and appeal to this Court. *See* I.R.C.
§§ 6320(c), 6330(e), 6901(f). Thus, there currently is no statutory bar
against the Government's ability to bring suit against Frese for liability
pursuant to the Priority Statute.

In any event, the Estate's assertion of an "administrative statute
of limitations" misreads the Manual. The provision on which the
Estates relies (Br. 24), Part 5.8.5.18, instructs agents to include the
value of "dissipated assets" in a taxpayer's assets for purposes of
calculating reasonable collection potential. This is a separate issue
from whether there is the potential to collect from third parties under

-35-

fiduciary or transferee theories.[8]  Regarding *that* issue, the Manual

separately and specifically instructs agents to "include the value in

computing [reasonable collection potential] but not actually complete

the administrative actions required to establish the liability against the

third party which might include any of the following: initiating an IRC

6901 administrative assessment . . . or initiating a suit to establish

transferee liability."  IRM 5.8.4.21 (09-24-2020).  When such issues

arise, IRM 5.8.5.6 (03-23-2018) instructs agents to "apply the principles

in IRM 5.17.14" which sets forth the procedures for pursuing fiduciary

transferee liability.  It further notes that "[a] request for Counsel

opinion, in accordance with local procedures, prior to the offer

recommendation may be necessary to determine an accurate value to

include in an acceptable offer amount."  IRM 5.8.5.6(2).

That is exactly what Settlement Officer Tevis did here.  When the

documents produced by the Estate appeared to show the potential for

recovery from Frese as fiduciary and from the children as transferees,

---

[8] The "dissipated assets" analysis looks to whether the calculation of the taxpayer's assets should be increased to take into account assets that the taxpayer spent or otherwise dissipated.  The "fiduciary or transferee" liability analysis looks to whether there are assets that the IRS could potentially recover from third parties.

-36-

Tevis considered that evidence, consulted with an estate tax collection specialist, and obtained an opinion from Chief Counsel advising him that he should include such potential third-party liability in calculating reasonable collection potential.  In short, Tevis did exactly what he was supposed to do.  Far from abusing his discretion, Tevis scrupulously exercised that discretion and appropriately considered the potential to collect from Frese as fiduciary of the Estate under 31 U.S.C § 3713.

### 2. Appeals also correctly considered the children's potential liability under I.R.C. § 6324(a)(2)

The Tax Court found it unnecessary to consider the children's potential liability under I.R.C. § 6324(a)(2) in light of its finding that Appeals correctly included Frese's potential fiduciary liability in calculating the Estate's reasonable collection potential, which alone would justify rejecting the offer-in-compromise. (A.19.)  Nevertheless, this Court could affirm based on the separate and independent ground that Appeals also correctly considered the children's potential transferee liability in rejecting the offer-in-compromise.  *See Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 333 n.8 (3d Cir. 2000) ("An appellate court may affirm a decision on a ground other than that relied on by the [lower] court.")

Section 6324(a)(2) provides that if estate tax is not paid when due, then a transferee or beneficiary who receives property included in the gross estate under Sections 2034 through 2042 of the Code (*i.e.*, non-probate property) shall be personally liable for such tax to the extent of the value of such property at the time of the decedent's death.  I.R.C. § 6324(a)(2).  And it is well-settled that "the statute of limitations for the [transferee's personal] liability [under § 6324(a)(2)] depends upon the statute of limitations for the [transferor's] liability: so long as the government could bring a timely action against the [transferor], its action against the [transferee] will be considered timely." *United States v. Botefuhr*, 309 F.3d 1263, 1277 (10th Cir. 2002).  Indeed, "the few courts that have considered this issue directly in the context of § 6324 have looked at the generally applicable statutes of limitations created under § 6501 and § 6502 of the IRC, and they have reasoned that if the suit would be timely against the [transferor] under these provisions, it will be considered timely against the donee or transferee." *Id.*; *see also United States v. Geneviva*, 1993 WL 597442, at *2-*3 (W.D. Pa. Apr. 14, 1993), *aff'd*, 16 F.3d 522 (3d Cir. 1994).

The record shows that the decedent's children collectively received non-probate assets includable in the decedent's gross estate totaling $1,470,019.00, including (1) life insurance death benefits in the amount of $1,254,000 listing decedent's children, Sandra Less and David Lee, as beneficiaries; (2) retiree death benefits of $14,000; and (3) annuities totaling $202,019.00 listing the beneficiaries as "children of decedent equally." (*See* A.291; *see also* A.339.)  Accordingly, they are personally liable for payment of the outstanding estate tax up to the value of that property.  Because that potential personal liability was more than sufficient to fully satisfy the outstanding estate tax, Appeals was well within its discretion in denying the offer-in-compromise on the ground that the reasonable collection potential exceeded not only the offer-in-compromise but the estate tax itself.

### C.    The Estate's arguments regarding purported legal errors committed by Appeals in rejecting the offer-in-compromise are without merit

#### 1.    Appeals properly considered the assets distributed by Frese

The Estate argues for the first time on appeal that Frese's transfer of $640,000 in cash to the children in February 2007 cannot be a "trigger" event (Br.13) for purposes of § 3713.  This Court generally

does not consider such arguments made for the first time on appeal in the absence of extraordinary circumstances.[9] *See Banks v. President United States*, 858 F. App'x 490, 491-92 (3d Cir. 2021). That principle applies with extra strictness in the context of a CDP proceeding, as "judicial review extends only to those issues raised before the Office of Appeals." *Tucker*, 506 F. App'x at 168; *Living Care*, 411 F.3d at 625; Treas. Reg. § 301.6330-1(f)(2) (Q&A-F3).

In any event, this new argument is wrong for multiple reasons. First, as noted, in reviewing a rejection of an offer-in-compromise by Appeals, this Court's focus is on the record before the agency. Here, as explained *supra* at pp. 9-10, the record before Tevis clearly showed *cash payments* to the children by Frese *from the Estate*, including $640,000

---

[9] During the CDP hearing, the Estate argued only that the distributions in question were made more than three years earlier, *not*, as it argues on appeal, that they were non-probate assets outside of Frese's control. (*See, e.g.*, A.592.) And in the Tax Court, the Estate argued only that these distributions were "irrelevant" under § 3713, because "a debt to the United States was not assessed at the time of the distributions." (A.615.) As we explain above, at pp. 29-36, these assertions do not alter the reasonableness of including the distributions in the reasonable collection potential calculation. Ultimately, the Estate admitted that Frese had made distributions of Estate assets to the children totaling $1,045,000, $640,000 of which was distributed on February 28, 2007. (*See* A.615; A.645 ¶¶ 33, 34; A.646 ¶ 37; A.656.)

-40-

in payments made by Frese after he had knowledge of the estate-tax liability. (*See*, *e.g.*, A.599 ("Statement of Distributions" detailing distributions to the children totaling $1,045,000, of which $640,000 was distributed on February 28, 2007); *see also* A.496-A.508 (detailing exercise and sale of stock options *by the Estate* during the period 2003 to 2012)). Thus, the Estate is simply wrong when it argues that "there is no evidence that" "an event that provoke[d] a right of action in favor of the government" under the Priority Statute "ever took place" (Br. 20). To the contrary, the very documents submitted by the Estate to the IRS provided such evidence. It was not an abuse of discretion for Appeals to rely on the Estate's own accountings showing distributions of Estate assets in determining that improper distributions had been made.

Second, the Estate's claim that the decedent's stock options passed to the children as "non-probate assets" (Br. 15, 17-19) is belied by the record. For one thing, the Estate's Form 706 estate-tax return lists the stock options as probate assets on Schedule B. (A.293.)[10] The Estate now asserts that the decedent's many stock options identified as

---

[10] The non-probate assets distributed to the children are detailed above, at p. 4, and do not include the stock options.

probate assets on Schedule B passed outside of probate—and thus outside Frese's control—as a matter of law because "a letter from decedent's employer stated that decedent's surviving spouse had been designated as his beneficiary of certain stock options" (Br. 18-19).  But the letter in question (A.333; *see also* A.303) refers to only one specific "Certificate of Extra Compensation #1003981 payable to estate of Kwang Lee" which it valued at $121,800.  (*See* A.303.)  It does not address the many other stock options held by the decedent on the date of his death which passed to his estate, which the Estate valued as worth at least $1,365,644 (not including the as-yet unvested options which the estate valued at $0).  (A.293.).[11]  Nor does it explain Frese's dominion over those options, which he exercised and sold, before distributing the funds to the children.

The Estate also errs in arguing that the decedent's will somehow absolved Frese from any potential liability under § 3713 for his exercise of these options and distribution of the proceeds to the decedent's

---

[11] Indeed, as discussed *supra* at p. 5 n. 6, the Estate separately listed this "Certificate of Extra Compensation" from the various stock options the decedent held at death on the estate's Form 706 estate-tax return, Schedule M.

children (Br. 17).  The estate has no basis to fault Appeals for "neglect[ing] to read the decedent's last will and testament" (Br. 17), given that the Estate never asserted any argument based on that will during the CDP hearing.  This Court should refuse to consider this issue, as having been raised for the first time on appeal.  *Banks*, 858 F. App'x at 491-92; *Tucker*, 506 F. App'x at 168; *Living Care*, 411 F.3d at 625; Treas. Reg. § 301.6330-1(f)(2) (Q&A-F3).

In any event, the will does not help the Estate's case.  The Estate asserts that because "the remainder of the decedent's assets passed to trusts created pursuant to his last will and testament for the benefit of his children[,]" including the decedent's stock options, "[w]hat the Commissioner claims are distributions . . . stem from transactions that took place outside of the estate and at death, not in 2007."  (Br. 18.) But Frese was both the executor of decedent's will and the trustee of the testamentary trusts created therein.  (*See* A.258.)  Even if the stock options transferred to the trust by virtue of the decedent's will, they remained subject to the obligation to satisfy the Estate's federal estate-tax liabilities.  Pursuant to the Priority Statute, before any Estate assets could pass to the trust—itself a beneficiary of the Estate—and

-43-

subsequently to the children as beneficiaries of the trust, Frese was obligated to use those assets to satisfy the Estate's estate-tax liabilities. *See King v. United States*, 379 U.S. 329, 337 (1964) (the purpose of the Priority Statute "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid"); *Cf. Riggs v. Del Drago*, 317 U.S. 95, 97-98 (1942) ("Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax"). That is, before using Estate assets to fund the trust created by the will, Frese was obligated to satisfy the Government's estate-tax claim. And when Frese distributed the cash proceeds from the exercise of the stock options that purportedly devolved to the trust, he did so in derogation of his obligations both as executor of decedent's estate and trustee of the trust.

Moreover, even if the trust sprung into existence upon the decedent's death, it remained to be determined through probate which of decedent's assets would pass to the trust. *See, e.g., Matter of Est. of*

-44-

*Ross*, No. A-5237-17T1, 2019 WL 1492691 (N.J. Super. Ct. App. Div. Apr. 3, 2019).  Indeed, the will itself provided that "all inheritance, estate, transfer, succession and other death taxes or duties . . . imposed by any jurisdiction whatsoever by reason of my death, upon or with respect to any property includable in my estate for the purpose of any such taxes or duties, whether such property passes under or outside, or has passed outside, the provisions of this Will . . . be paid out of my residuary estate . . . as an expense of administration."  (A.259 ¶ EIGHTH.)  And the trust in question is comprised of the "residuary *net* estate."  (A.248 ¶ FOURTH (emphasis added).)  That is, even under the will's own terms, estate taxes are to be paid *first* from the decedent's estate, and any residue is to be placed into trust for the children's benefit.  *See Newberry v. Neeld*, 46 N.J. Super. 216, 507 (App. Div. 1957) (discussing the "well recognized law that the federal estate tax is to be paid out of the residuary estate").

Further, even if it were correct that the stock options passed immediately into the trust at the time of decedent's death, that would subject Frese to transferee liability under I.R.C. § 6324(a)(2) as trustee of the trust.  That section imposes personal liability on a "*trustee . . .*

who receives, or has on the date of decedent's death, property included in the gross estate under sections 2034 to 2042." I.R.C. § 6324(a)(2) (emphasis added).  Put simply, either way, the Estate's argument fails: Either the stock options were probate assets over which Frese had dominion and control and the distribution of their proceeds by Frese as executor subjected him to fiduciary liability under 31 U.S.C. § 3713, *or* the stock options were non-probate assets (as the Estate now argues) which Frese received as trustee on the date of the decedent's death such that he has personal liability for the unpaid estate tax as a transferee pursuant to I.R.C. § 6324(a)(2).  *See*, *e.g.*, *Est. of Cutler v. Commissioner*, 5 T.C. 1304, 1316 (1945) (trustee of testamentary trust "is a transferee of property of the decedent within the definition of" a predecessor to § 6324(a)(2)), *aff'd sub nom Newton Tr. Co. v. Commissioner*, 160 F.2d 175 (1st Cir. 1947).

Finally, even if the Estate were somehow correct that Frese has no potential liability, whether under § 3713 or § 6324(a)(2), this Court still should affirm, because, as explained *supra* at pp. 36-38, the children are subject to transferee liability under § 6324(a)(2), by virtue of having received life insurance, death benefit, and annuity payments in an

-46-

amount sufficient to satisfy the outstanding estate-tax liability—and thus, sufficient to justify the rejection of the offer-in-compromise.

## 2.    Frese's claim of reliance on counsel is inapt

The Estate shoots wide of the target when it argues that Frese was insulated from liability under § 3713 by virtue of having relied on advice from the Estate's counsel.  (Br. 21-24.)  There are numerous problems with the Estate's argument, any one of which is sufficient to reject it outright.

Most important, the Priority Statute contains no exception from liability for reliance on advice of counsel:  the "reach of the Priority Statute 'is not cabined by the poor advice of attorneys.'"  *United States v. Renda*, 709 F.3d 472, 485 (5th Cir. 2013) (quoting *United States v. Golden Acres Inc.*, 684 F. Supp. 96, 103 (D. Del. 1988)).  To the contrary, "a representative's actual knowledge of a federal claim is sufficient, notwithstanding that representative's reliance on the erroneous advice of counsel as to how to address the claim."  *Renda*, 709 F.3d at 484.  *See, e.g.*, *United States v. Bartlett*, 186 F. Supp. 2d 875, 886 (C.D. Ill. 2002) (holding executrix with actual knowledge personally liable for estate tax under § 3713 despite her claim that she relied on advice of counsel as to

estate matters); *Golden Acres*, 684 F. Supp. at 103 (holding directors liable under § 3713 despite their claim that their attorneys advised them that they had a right to make the payments in question); *United States v. MacIntyre*, No. CIV.A H-10-2812, 2012 WL 2403491, at \*4 (S.D. Tex. June 25, 2012) (executor and trustee liable notwithstanding legal advice leading them to believe Government's claim was invalid).

In one case, the Tax Court held that an executor did not have the requisite knowledge of a Government debt where, among other things, he reasonably relied in good faith upon multiple erroneous assurances from counsel that the estate had no federal tax liabilities. *See Little v. Commissioner*, 113 T.C. 474 (1999). As the Fifth Circuit observed, however, that case is "inconsistent with the weight of authority on this issue." *Renda*, 709 F.3d at 484 n.15; *see also United States v. Marshall*, 798 F.3d 296, 312 (5th Cir. 2015) (rejecting *Little* because "(1) 'the statute does not provide for an attorney-reliance exception,' and (2) 'a contrary interpretation would create an exception to the Priority Statute that might swallow the rule.'") (quoting *Renda*, 709 F.3d at 485). And, as the Tax Court explained in its opinion below (A.15-A.16), *Little* is distinguishable from the facts presented here. First, the Estate

-48-

here offered no evidence of any advice to Frese regarding the

distributions in question.  And in its brief on appeal the Estate once

again cites nothing in the record to suggest that Frese was acting on

advice of counsel that the Estate had no federal estate-tax liability (*i.e.*,

had no "debt" owing to the United States that must be paid first under

§ 3713(a)) when he distributed Estate assets to the children).  Second,

in *Little*, the executor had no actual or constructive knowledge of the

estate's tax liabilities, while Frese, in contrast, had actual knowledge of

the Government's claim by virtue of having received the notice of

federal tax lien.  Thus, *Little* would be no help to Frese here even if it

represented an accurate statement of the law.

The Estate also erroneously argues (Br. 21) that the issue of

reliance on counsel was already conclusively established in the

proceedings before the Tax Court regarding the Estate's estate-tax

liabilities, *Est. of Lee v. Commissioner*, T.C. Memo. 2009-84, 2009 WL

1118876 (Tax Ct. 2009).  But, as the Tax Court correctly observed (A.16

n.6), that determination has no bearing whatsoever on the issue of

whether Frese has personal liability for the already-established estate-

tax liability under 31 U.S.C. § 3713 because he distributed Estate

assets, thereby rendering the Estate insolvent, with the knowledge that a debt was due to the United States.  The issue decided in the earlier Tax Court proceedings concerned only whether the *Estate* was liable for *accuracy-related penalties* pursuant to I.R.C. § 6662(a) as a result of having improperly claimed on its estate-tax return marital deductions for transfers to Kyoung.  (*See supra* at p. 5.)  The Code contains a specific defense to the imposition of penalties under I.R.C. § 6662 where the taxpayer acts with reasonable cause and in good faith, including, in some circumstances, good-faith reliance on advice of counsel.  *See* I.R.C. § 6664(c)(1).  In the earlier proceedings cited by the Estate, the Tax Court held that the Estate qualified for this defense to imposition of accuracy-related penalties for filing an inaccurate estate-tax return, because Frese had relied in good faith on the Estate's counsel's advice *that it had properly claimed the marital deduction on its return  See Estate of Lee*, 2009 WL 1118876, at *4 (Estate counsel "assured Judge Frese that the return was correct and that the claimed deductions were proper"); *id.* at *5 ("we find, Judge Frese relied reasonably and in good faith on the advice of [counsel] as to the legitimacy of the deductions").

Thus, the earlier proceedings establish *only* that the Estate should not be penalized for filing an inaccurate return because Frese relied on advice of counsel that the return was correct when he filed it.  That holding says nothing about Frese's later actions in distributing estate assets to the decedent's children *after he had received a notice of deficiency* indicating that the Estate had underpaid its estate-tax liabilities as a result of those inaccuracies.  In that regard, the Tax Court correctly held here (A.14-A.15) that the "notice of deficiency, issued to Mr. Frese before he made the February 2007 distribution, was sufficient to create a claim under the" Priority Statute.  The notice of deficiency, at a minimum, gave Frese "notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the Government's unpaid claim." (A.14, citing *Leigh v. Commissioner*, 72 T.C. 1105, 1109-1110 (1979); *New v. Commissioner*, 48 T.C. 671, 676-78 (1967); *Irving Tr. Co. v. Commissioner*, 36 B.T.A. 146, 148 (1937).)  As explained by the Tax Court (A.14), "a notice of deficiency with respect to estate tax liabilities given to an executor before the executor's distribution of estate assets is sufficient to satisfy this notice requirement." *See Viles v. Commissioner*, 233 F.2d 376, 380 (6th Cir.

1956); *Est. of Frost v. Commissioner*, T.C. Memo. 1993-94, 1993 WL 75053, at *15 (Tax Ct. 1993). And, again, the Estate cites nothing in the record to show that Frese received any advice that it was proper to make distributions of estate assets to the children after having received the notice of deficiency.

Moreover, as explained *supra* at pp. 47-49, unlike I.R.C. § 6664(c), which contains an explicit statutory exception to accuracy-related penalties based upon reasonable cause and good faith, nothing in the Priority Statute suggests that such a defense is available to claims there. *See* 31 U.S.C. § 3713. Indeed, the weight of authority is that no such defense exists. *See Marshall*, 798 F.3d at 312; *Renda*, 709 F.3d at 484. For this reason, the cases that the Estate cites interpreting I.R.C. § 6664(c) and its implementing regulations are inapposite. (*See* Br. 22 & 24, citing *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); *Alli v. Commissioner*, T.C. Memo. 2014-15; *Crimi v. Commissioner*, T.C. Memo. 2013-51; *Freytag v. Commissioner*, 89 T.C. 849, 888 (1978), *aff'd*, 904 F.2d 1011 (5th Cir. 1990), *aff'd*, 501 U.S. 868 (1991); *Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States*, 568 F.3d 537, 548 (5th Cir. 2009).)

### 3. Settlement Office Tevis was not required to investigate whether Frese and the decedent's children were judgment proof

Equally meritless is the Estate's alternative argument (Br. 25-26) that Appeals committed error in failing to investigate how much of the Estate's unpaid liability actually could be collected from Frese or the children. "After all, the question is not the correctness vel non of the IRS's determination" that Frese and the children were liable. *Dalton v. Commission*, 682 F.3d 149, 159 (1st Cir. 2012). "Rather, the question is whether the IRS's determination, whether correct or not, falls within the wide universe of reasonable outcomes." *Dalton*, 682 F.3d at 159. As explained by the First Circuit:

> Whether an IRS determination reached during the CDP process rests upon a purely factual question, a purely legal question, or a mixed question of fact and law, a reviewing court's mission is the same: to evaluate the reasonableness of the IRS's subsidiary determination. The CDP process presents no occasion for a reviewing court to demand incontrovertibly correct answers to subsidiary questions, whatever their nature. Rather, the IRS acts within its discretion as long as it makes a reasonable prediction of what the facts and/or the law will eventually show.

*Dalton*, 682 F.3d at 159; *see also Schwartz*, 348 F. App'x at 808 (the "'Judicial Branch does not instruct the Executive Branch how to make executive decisions'") (quoting *Orum*, 412 F.3d at 821).

Here, Tevis made such a "reasonable prediction" regarding the
liability of Frese and the children.  The Estate—which bore the burden
of proof both before Appeals and in the Tax Court—failed to present any
evidence to the contrary.  Tevis was accordingly entitled to presume
that the collection potential from Frese and the children was not
insignificant.  The exact amount collectible from them is irrelevant.  *See
Johnson v. Commissioner*, 136 T.C. 475, 491-92 (2011).  The Estate's
offer to pay approximately $182,000 in satisfaction of its approximately
$444,000 liability was premised on its theory that, as a matter of law,
*no* amount could be collected from either Frese or the children because
the statute of limitations for such collection had passed.  Having
received advice from IRS Area Counsel that Frese was liable under 31
U.S.C. § 3713 and that the children were liable under I.R.C.
§ 6324(a)(2) for as much as approximately $2.3 million, Tevis would
have been irresponsible had he accepted the estate's $182,000 offer and
thereby possibly jeopardized collection of the remaining tax from Frese
and the children.  At a minimum, Tevis acted within his discretion to
reject that lowball offer.

In this regard, it bears noting that the Estate's attempt to stave
off the IRS's proposed collection by offering to deliver all of its
remaining assets to the IRS in return for the extinguishment of its
estate-tax liability makes sense *only* as a means to simultaneously
extinguish the liability of the children.  The Estate could avoid
collection simply by voluntarily paying over all of its assets to the IRS.
The Estate itself has nothing to gain by offering, instead, to hand over
all of its assets *if* the IRS extinguishes its tax liability.  The *Estate*
should be *neutral* as to whether the proposed collection action
proceeds—either way, it will give up its remaining assets.  But
extinguishment of the Estate's estate-tax liability through an offer-in-
compromise potentially could be beneficial to the children.  This is
because, as discussed *supra* at p. 37, the tax liability of a transferee of a
decedent's property under I.R.C. § 6324(a)(2) is contingent and strictly
derivative of an estate's liability, *i.e.*, the transferees are liable only to
the extent that the estate's tax liability has not been satisfied by the
estate.[12]  Accordingly, had Tevis agreed to accept the Estate's offer to

---

[12] *See Baptiste v. Commissioner*, 29 F.3d 1533, 1541 (11th Cir.
1994) ("the language of section 6324(a)(2) does not provide that the
(continued…)

pay $182,000 in full satisfaction of the estate's $444,000 unpaid estate-tax liability, the children, in all likelihood, would have defended against any attempt by the IRS to hold them liable for the remainder by asserting that the extinguishment of the Estate's tax liability necessarily served to extinguish their derivative liability under I.R.C. § 6324(a)(2). *See Salazar*, 95 T.C.M. (CCH) 1149. The possibility that the acceptance of the Estate's offer-in-compromise might have precluded the IRS from collecting anything at all from the children was ample reason in itself for Appeals to reject the Estate's offer.

---

liability of a transferee is a tax liability. Rather, it imposes an obligation on the transferee to satisfy the underlying tax liability of the transferor estate. Because the estate's obligation is one in the nature of a tax does not mean the transferee also has a tax liability.")

# CONCLUSION

The decision of the Tax Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Paul A. Allulis

JENNIFER M. RUBIN            (202) 307-0524
PAUL A. ALLULIS             (202) 514-5880
  *D.C. Bar No.* 463972