# No. 21-2921

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

ESTATE OF KWANG LEE, DECEASED,
ANTHONY J. FRESE, EXECUTOR,

*PETITIONERS-APPELLANTS*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*RESPONDENT-APPELLEE.*

On Appeal From
the United States Tax Court
(Tax Court Docket No. 20531-18L)
Honorable Travis A. Greaves, United States Tax Court Judge

## REPLY BRIEF FOR PETITIONERS-APPELLANTS

Agostino & Associates, P.C.
Counsel for Appellants
14 Washington Place
Hackensack, New Jersey 07601
Tel: (201) 488-5400

Of Counsel:
Frank Agostino

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

SUMMARY OF ARGUMENT .................................................................iv

ARGUMENT ...........................................................................................1

The Government Cannot Use the Internal Revenue Manual as Both a Sword and a Shield…………………………………………………………………………….1

The Government's Argument About the Timing of Decedent's Assets is Circular and Contradicts His Statement That There are No Facts In Dispute…………..………8

Frese's Reliance on Counsel Argument Was Not Appropriate for Summary Judgment………………………………………………………………....………11

CONCLUSION ........................................................................................14

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(g) and 3d Cir. R. 31.1(c) .................................................................................................... 15

CERTIFICATE OF SERVICE ...............................................................16

ii

# TABLE OF AUTHORITIES

**Cases**

*Akonji v. Commissioner*, T.C. Memo. 2012-56

*Ala. Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461 (2004)

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)

*Anderson v. Comm'r*, 698 F.3d 160 (3d Cir. 2012)

*Arizona v. California*, 460 U.S. 605 (1983))

*Bank of West v. Commissioner*, 93 T.C. 462 (1989)

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)

*DeKalb Cty. v. U.S. Dep't of Labor*, 812 F.3d 1015 (11th Cir. 2016)

*Eichler v. Commissioner*, 143 T.C. 30 (2014)

*Estate of Kwang Lee v. Commissioner*, T.C. Memo. 2009-84

*Fairlamb v. Commissioner*, T.C. Memo. 2010-22

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985)

*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997)

*Fuller v. Winter*, 538 F. Supp. 2d 179 (D.D.C. 2008)

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535 (11th Cir. 1996)

*Hoyle v. Commissioner*, 131 T.C. 197 (2008)

*Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284 (11th Cir. 2015))

*LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 34-35 (2016)

*Marsh v. Or. Natural Res. Council*, 490 U.S. 360 (1989)

*Moriarty v. Commissioner*, T.C. Memo. 2017-204 aff'd per order, 2018 WL 4924349 (6th Cir. Sept. 19, 2018)

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)

*Nat. Res. Def. Couns. v. EPA*, 438 F. Supp. 3d 220 (S.D.N.Y. 2020)

*N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533 (11th Cir. 1990))

*Richardson v. Perales*, 402 U.S. 389 (1971)

*Salazar v. King*, 822 F.3d 61 (2d Cir. 2016)

*Savedoff v. Commissioner*, T.C. Memo. 2020-125

*S.E.C. v. Chenery Corp.*, 332 U.S. 194 (1947)

*Service v. Dulles*, 354 U.S. 363 (1957)

*Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127 (11th Cir. 2012))

**Statutes**

5 U.S.C. §§ 706(2)(A), (E)

31 U.S.C. § 3701(b)(1)

**Other Authority**

IRM pt. 1-2-1-6-17 (01-30-1992)

IRM pt. 5.8.4.3.1

I.R.M., pt. 5.8.5.18(2) (Sep. 24, 2021)

PMTA 2013-14

## Summary of Argument

The government's opening brief makes clear that the government intends to use the Internal Revenue Manual ("IRM") as both a shield and a sword. Courts have consistently held that the Internal Revenue Service's ("IRS") adherence to the IRM is required in its administrative collection due process hearings. Courts also held that failure to abide by enacted policies and rules runs afoul of administrative law. The IRS develop a set of rules by which it evaluates offers-in-compromises ("OIC"). It rules bind taxpayers and adherence to them is required in order to gain a benefit provided for by Congress, i.e. acceptance of an offer-in-compromise. Where the government's argument fails is when it argues that it is not bound by the same rules. Such action is an abuse of discretion and the Tax Court erred in not holding as such.

With respect to the government's argument about the alleged timing of the distributions of the decedent's assets, it fails to meet the standard for summary judgment in that there are factual issues either in dispute or not developed during the collection due process hearing. Any attempt at a post hoc rationalization of Appeals' decision making violates the *Chenery* doctrine.

Finally, the executor's reliance on a professional defense was not appropriate for summary judgment. Reliance on a professional defense is inherently fact sensitive and appropriate for summary judgment. Furthermore, the

Tax Court should have drawn every inference on the estate's favor, including the inference that Frese relied on a professional based on the fact that it had already held that the executor in this case had reasonably relied on the same professional for the same advice.

For these reasons, and for the reasons set forth in its opening brief, this Court should reverse the Tax Court and remand with instruction to order the Commissioner to accept the OIC or to remand to Appeals to properly evaluate the Commissioner's decision to reject the OIC.

1

## Argument

### Point I

### The Government Cannot Use the Internal Revenue Manual as Both a Sword and a Shield

The Appeals Office in reviewing the Offer and the Tax Court in reviewing the agency's determination were bound by the Internal Revenue Manual's requirement that limit the definition of dissipated assets to those transferred within last three years.

The taxpayer argued below and at the CDP hearing that the Appeals Office erred by including assets purportedly transferred longer than three years prior to making the offer in compromise. Generally, the Commissioner looks to the ***three years*** before the OIC to find potential dissipated assets that should be included in RCP. I.R.M., pt. 5.8.5.18(2) (Sep. 24, 2021). It is IRS policy to accept offers when it is unlikely that the tax liability can be collected in full and the amount reasonably reflects collection potential. IRS Policy Statement 5-100 provides

> The Internal Revenue Service (IRS) will accept an offer in compromise when it is unlikely that the tax liability can be collected in full and the amount offered reasonably reflects collection potential. An offer in compromise is a legitimate alternative to declaring a case currently not collectible or a protracted installment agreement. The goal is to achieve collection of what is potentially collectible at the earliest possible time and at the least cost to the Government.

IRM pt. 1-2-1-6-17 (01-30-1992).

Section 6330(c)(1) requires Appeals to verify that Appeals officers follow all applicable law and administrative procedures, including the IRM. *See Hoyle v. Commissioner*, 131 T.C. 197 (2008). The IRS has enumerated a policy by which they use a three-year window to evaluate asset transfer in the context of offers in compromise. Appeals and the Tax Court's review of Appeals in this case under section 6330 has focused on asset transfers that purportedly took place more than three year prior to the offer. This expanded lookback violates the IRS's policy as set forth in the IRM. Therefore, these transfers were not relevant to the inquiry and rules for accepting offers in compromise in the IRM. The appropriate result would have been for the Tax Court to remand the matter back to Appeals to verify compliance with the administrative procedures and evaluate the offer using the three-year lookback rule.

Against the IRS policy of encouraging settlements, the IRS makes inconsistent arguments about the scope and force of the Internal Revenue Manual which invalidates its argument about the administrative statute of limitations and the analysis of dissipated assets. The government first argues that Appeals did not abuse its discretion in denying the Estate's offer in compromise because it adhered to its internal guidance, the IRM. The government posits that Appeals was bound to compute the taxpayer's reasonable collection potential by the formula provided

3

by IRM pt. 5.8.4.3.1. It argues that the IRM defines reasonable collection potential as "the amount that can be collected from all available means," and is calculated using the following components of collectability: (1) assets; (2) future income; (3) amount collectible from third parties; and (4) assets and/or income that are available to the taxpayer, but are beyond the reach of the government. IRS procedure is to reject offers in compromise that are less than the reasonable collection potential. From this, it concludes that Appeals did not abuse its discretion due to its strict adherence to these guidelines. In other words, in order for the taxpayer to get the benefit of a statute enacted by Congress, i.e. an offer in compromise provided by 26 U.S.C. § 7122, it become obligated to adhere to the sections of the IRM defining reasonable collection potential.

The government argues later that the IRM definition of "dissipated assets" and the directive not to include them in the determination of reasonable collection potential, what the estate referred to as an administrative statute of limitations, is merely a guideline and that the IRM has no force of law. These arguments are incongruous. On the one hand the IRM binds the taxpayer and creates burdens it must meet in order to gain the benefit of a remedy provided for by Congress. On the other hand, the government is never actually bound its own procedures and can pick and choose when to apply them. This fundamentally misstates administrative law and is per se arbitrary and capricious.

4

Central to the concept of due process is the idea that administrative agencies are consistent and follow their own rules and guidelines. "It is a fundamental principle of administrative law[,]" however, "that an agency is bound to adhere to its own regulations." *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008); *see also Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (stating that an agency may not "proceed without regard" to the "substantive and procedural standards" it has "impose[d] upon [itself]"); *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) ("[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." (citation omitted)); *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (observing that agencies are "bound to follow [their] own regulations"); *Nat. Res. Def. Couns. v. EPA*, 438 F. Supp. 3d 220, 229 (S.D.N.Y. 2020) (same). *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("If the record before the agency does not support the agency action, [or] if the agency has not considered all relevant factors, ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

An agency of the United States is expected to act in accordance with its own procedures. It would be fundamentally unfair to allow an agency to create rules that bind taxpayers while at the same time arguing that it is never bound the same

rules. This is especially true where rights provided by Congress are conditioned on compliance with agency rules.  Collection due process is a procedural safeguard created by Congress as part of the Internal Revenue Service Revenue and Restructuring Act of 1998. It requires that the IRS follow a set of procedures to ensure that taxpayers have due process protections when facing IRS levy and lien actions. 26 U.S.C. §§ 6230, 6330. Taxpayer due process cannot be achieved when the administrative agency is free to pick and choose which of its rules suits them best. While the government correctly points out that the Internal Revenue Manual does not create substantive taxpayer rights, application of administrative law is contingent on the administrative agency developing rules and then abiding by them.

The Tax Court has consistently held that Appeals officers are required to follow the IRM. Although the Internal Revenue Manual is not binding authority, the Tax Court will often look to it to determine whether Appeals abused its discretion. If Appeals followed the procedures in the Internal Revenue Manual, the Court is unlikely to find an abuse of discretion. However, an Appeals' "determination * * * [that is] based wholly on misapplication of internal procedures, cannot be said to have a sound basis in law or fact." *Fairlamb v. Commissioner*, T.C. Memo. 2010-22. Furthermore, the Tax Court in *Savedoff v. Commissioner*, T.C. Memo. 2020-125 held that "the determination to sustain the

filing of the NFTL despite the existence of the second installment agreement was consistent with the relevant provisions of the IRM. We have previously held that a settlement officer does not abuse her discretion when she adheres to collection guidelines published in the IRM." *See also Eichler v. Commissioner*, 143 T.C. 30, 39 (2014) (finding no abuse of discretion where SO followed IRM guidelines in declining to rescind notices of intent to levy); *Moriarty v. Commissioner*, T.C. Memo. 2017-204 (finding no abuse of discretion where SO followed IRM guidelines in declining to withdraw or subordinate a tax lien), aff'd per order, 2018 WL 4924349 (6th Cir. Sept. 19, 2018); *Akonji v. Commissioner*, T.C. Memo. 2012-56 (same).

Under the APA, a court may set aside agency actions, findings, and conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E). This standard is "exceedingly deferential" to the agency. *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). "To determine whether an agency decision [is] arbitrary or capricious, the reviewing court must consider whether the decision [is] based on a consideration of the relevant factors and whether there ha[s] been a clear error of judgment." *Id.* (quoting *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990)). "The scope of review under the 'arbitrary and capricious' standard is narrow, and a court is not to

substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). Examples of arbitrary or capricious agency decisions include those where an agency considers material "Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43, 103 S.Ct. 2856. Similarly, " '[t]he substantial evidence standard limits the reviewing court from deciding the facts anew, making credibility determinations, or re-weighing the evidence.' " *DeKalb Cty. v. U.S. Dep't of Labor*, 812 F.3d 1015, 1020 (11th Cir. 2016) (quoting *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1133 (11th Cir. 2012)). "Substantial evidence ... 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Under this standard, a court may " 'reverse such findings only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough.' " *Id.* (quoting *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1304 (11th Cir. 2015)).

8

"Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.' " *Ala. Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

## Point II

### The Government's Argument About the Timing of Decedent's Assets is Circular and Contradicts His Statement That There are No Facts In Dispute

The flaw in the government's 31 U.S.C. § 3713 argument is that there was no estate tax liability when the options passed from Kyoung Lee's trust to the children. In its opening brief, the taxpayer argued that the record was unclear about the how and when certain assets passed from the decedent to his beneficiaries under the will or by operation of law. At issue were certain stock option contracts held by the decedent which either passed at death to the estate of his pre-deceased spouse pursuant to his will or by operation of law to his designated beneficiary under the stock option contract. The government argues that this makes no difference because even if the assets passed at death either by operation of law or by the decedent's will, Frese still distributed them and that created a liability under the Federal Priority Statute. But at death there was no estate tax liability nor was there any liability when Frese filed the estate tax return. The Tax Court's decision

in *Kwang Lee* II, demonstrates that it was reasonable for Frese to believe there was no liability on this date. The IRS did not issue its Notice of Deficiency proposing an assessment of additional tax until 2006, five years after the decedent died and three years after the estate tax return was filed. The government goes on to add that even if the trust sprung into existence upon the decedent's death, it remained to be determined through probate which of decedent's assets would pass to the trust. The government adds that the decedent's will directed Frese to pay any estate taxes prior to distributed probate assets. Again, there was no estate due at death and nothing that could have put Frese on notice that there was any government claim to be paid.  Furthermore, such arguments about how Frese interpreted the will, or how Appeals viewed this issue were never developed so the Tax Court was left without sufficient facts to make its decision.

The term "claim" for purposes of the Federal Priority Statute means "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency", 31 U.S.C. § 3701(b)(1), and includes an estate's Federal tax liability. *Bank of West v. Commissioner*, 93 T.C. 462, 467 (1989). The problem with the government and the Tax Court's logic is that there was no "claim" when the return was filed or at death nor was the estate insolvent

and the administrative record as well as the Tax Court record is devoid of facts or analysis on this issue.

The government attempts to close this factual gap by arguing that it is all irrelevant because in any event Frese was either liable under the Federal Priority Statute by distributing the stock options at death, despite there being no estate tax liability at the time, or was liable as a transferee pursuant 26 U.S.C. § 6324(a)(2). This argument is flawed for two reasons. First, it depends on factual assumptions for which there is no support and were never developed by Appeals or the Tax Court. Second, it is the exact type of post hoc rationalization that courts are supposed to avoid under *Chenery*. Under the Chenery doctrine, "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). Simply saying that the IRS or the Tax Court ***could*** have found for the government under alternate theories (although factually incorrect), is not dispositive. The government and the Tax Court must be judged on what they did do, which is make a determination without adequate fact finding.  And even under the government's flawed factual alternative where Frese or the children are always liable even in the absence of the claim owed to the

United States, there was no fact finding done at any level to support that and the Tax Court was wrong to consider it.

Finally, Appeals and the Tax Court both ignored the IRS guidance on the statute of limitations issue that advised IRS employees to limit the lookback to ten years. The statute of limitations under section 6324(a)(2) also expired. PMTA 2013-14, n. 1 (As a result, the section 6324(a)(1) estate tax lien and section 6324(a)(2) like lien have the same collection statute of limitations period: ten years from the decedent's date of death.)

The Tax Court applies the administrative law principles of *Chenery I*, 332 U.S. 194 (1947), to collection due process cases. Under *Chenery*, a reviewing court will uphold agency action only on the basis invoked by the agency in undertaking the action. Accordingly, unlike in a deficiency case, the Tax Court will sustain Appeals' determination only on the bases stated in the Notice of Determination. *LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 34-35 (2016).

## Point III

### Frese's Reliance on Counsel Argument Was Not Appropriate for Summary Judgment

The Tax Court was wrong to grant summary judgment on the issue of Frese's reliance on the advice of counsel. First, the issue is inherently a factually sensitive issue. Second, the Tax Court should have found an inference in favor of the estate on this issue because it had previously found that Frese ***had*** relied on the

same counsel for advice regarding the same estate tax return. The Tax Court and the government in its opening brief seeks to separate the issue of reliance on the advice of a professional from *Kwang Lee II* and the case here but the reliance in both cases is the same. In *Kwang Lee II*, the Tax Court held that the Estate was not liable for the accuracy or failure to file penalties because the Executor reasonably relied on the Estate's attorney's advice there was no tax due from the decedent's estate. *Kwang Lee II*, T.C. Memo. 2009-84, Slip Op. at 13-16. In both instances Frese was relying on the advice of counsel that no estate tax was due. In the first instance, the reliance was on whether the return correctly reported no additional estate tax due. Here, the advice again was whether any estate tax was due as it relates to the Federal Priority Statute. The law-of-the-case doctrine should have precluded the Tax Court from finding otherwise or at least caused it to draw an inference in the estate's favor as the non-moving party for summary judgment. *See Anderson v. Comm'r*, 698 F.3d 160, 166-67 (3d Cir. 2012). "Under that doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" *Id.* (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

Summary judgment on the issue of Frese's reliance was not appropriate. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* All inferences must be drawn, and all doubts resolved, in favor of the nonmoving party. *Id.* at 255. Clearly, the inference should have been drawn that that Frese relied on the advice of counsel in this case just as he had been found to have done in the earlier case involving the same parties. This inference in the estate's favor as well as the factually sensitive nature of a reliance on a professional defense made summary judgment inappropriate. The Tax Court should have denied the government's motion and either conducted fact finding or remanded the case to Appeals for further fact finding.

## Conclusion

For the reasons set forth above and argued in the taxpayer's opening brief, the decision of the Tax Court decision to enter summary judgment in favor of the Commissioner was in error. This Court should reverse the Tax Court and remand with instruction to order the Commissioner to accept the OIC or to remand to Appeals to properly evaluate the Commissioner's decision to reject the OIC.

Date: March 24, 2022                    /s/ Frank Agostino
                                        Frank Agostino
                                        New Jersey Bar No.: 005921987
                                        Attorney for Petitioners-Appellants
                                        Agostino & Associates, P.C.
                                        14 Washington Place
                                        Hackensack, New Jersey 07601
                                        Tel: (201) 488-5400, x. 107

**Certificate of Compliance with Fed. R. App. P. 32(g) and 3d Cir. R. 31.1(c)**

It is hereby certified that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains X,XXX words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing program in 14-point font size and Times New Roman style.

3.      A virus detection program, AVG, has been run on the electronic version of the Reply Brief for Petitioner-Appellant and no virus was detected; and

4.      The text of the electronic version of the Reply Brief for Petitioner-Appellant are identical to the paper copies.

Date: March 24, 2022                  /s/ Frank Agostino
                                      Frank Agostino
                                      Counsel for Petitioner-Appellant
                                      Agostino & Associates, P.C.
                                      14 Washington Place
                                      Hackensack, New Jersey 07601
                                      Tel: (201) 488-5400

## CERTIFICATE OF SERVICE

It is hereby certified that on March 24, 2022, I electronically filed the foregoing Reply Brief for Petitioner-Appellant with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. Counsel for the Appellee is a registered CM/ECF user and will be served by the CM/ECF system. It is further hereby certified that I will mail to the Clerk of the Court of the United States Court of Appeals for the Third Circuit seven paper copies of the foregoing Reply Brief for Petitioner-Appellant.

Date: March 24, 2022                    /s/ Frank Agostino
                                        Frank Agostino
                                        Counsel for Petitioner-Appellant
                                        Agostino & Associates, P.C.
                                        14 Washington Place
                                        Hackensack, New Jersey 07601
                                        Tel: (201) 488-5400, x. 107